STATE EX REL. DONLAN, APPELLANT, *v.* BOARD OF COMMISSIONERS OF SANDERS COUNTY ET AL., RESPONDENTS.

(No. 3,414.)

(Submitted September 18, 1914.  Decided October 20, 1914.)

[143 Pac. 984.]

*Mandamus—Insufficient Affidavit—Bridges—Voluntary Erection by Private Person—Sale to County—Character of Property—Manner of Purchase.*

*Mandamus—*Affidavit—Insufficiency.
   1.  *Mandamus* lies only to compel the performance of a clear legal duty; hence, where the affidavit for the writ did not disclose such character of duty on the part of respondent board of county commissioners, a demurrer for want of substance was properly sustained.
   [As to what the writ of *mandamus* is and when it is allowable, see note in 89 Am. Dec. 728.]

Bridges—Part of Highway.
   2.  A bridge is part and parcel of the public highway.

Same—Voluntary Erection by Private Person—Effect.
   3.  Where one voluntarily erects a bridge intending that it should be a part of the public highway and belong to the public as such, or does so under an arrangement by which he might be compensated for the labor and materials furnished in constructing it, he may not claim

to be the owner, or attempt to restrain the public in the free use, thereof.

[As to duty to maintain on highway bridge not erected by highway authorities, see note in Ann. Cas. 1914A, 550.]

Same—Character of Property—Manner of Purchase by County..
4.  A bridge is real estate for the purchase of which for county use the method prescribed by subdivision 8 of section 2894, Revised Codes, must be pursued.

*Appeal from District Court, Sanders County; R. Lee McCullough, Judge.*

*Mandamus* by Edward Donlan to compel the board of county commissioners to issue to him warrants in a certain amount in payment of a bridge.    From a judgment for defendants, relator appeals.    Affirmed.

· *Mr. H. H. Parsons* and *Messrs. Tolan & Gaines,* for Appellant, submitted a brief; *Mr. R. F. Gaines* argued the cause orally.

No express grant of power is to be found in our Codes authorizing boards of county commissioners to purchase private bridges (as distinguished from toll-bridges).    The right of the commissioners to make the contract here involved must be resolved by a determination of whether there is such authority to be found in their "implied powers."    The rule is, of course, settled that boards of county commissioners must justify either under powers expressly conferred or powers necessarily implied from those expressed.    (*Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286.)    Of the expressed powers to which we may turn for enlightenment on this subject, we invite attention to section 2894 of the Revised Codes, and to subdivisions 4, 8 and 25 of that section.

More or less difficulty must always be encountered in attempting to classify or determine what powers are to be "implied" in each instance.    Probably every case must be an authority unto itself; but as near to a rule of general application that we have been able to find is that stated in *People* v. *Pullman's Palace Car Co.,* 175 Ill. 125, 64 L. R. A. 366, 51 N. E. 664, as follows: "A power which the law will regard as existing by implication ·must be one in a sense necessary,—that is, needful,

suitable and proper to accomplish the object of the grant,—and one that is directly and immediately appropriate to the execution of the specific powers, and not one that has but a slight, indirect or remote relation to the specific purposes of the corporation." This court has recognized this general rule, stating that every power necessary to execute the power expressly granted is necessarily implied. (*Yegen* v. *Board of County Commrs.*, 34 Mont. 79, 85 Pac. 740; *In re Farrell*, 36 Mont. 254, 92 Pac. 785; *State ex rel. Geiger* v. *Long*, 43 Mont. 401, 117 Pac. 104.)

We confidently assert that the decisions of this court relative to powers necessarily implied, the right of commissioners to select methods of procedure when the statute is silent, and the authority of commissioners with reference to highways and bridges generally, declare for the power and authority of the commissioners to make the contract referred to in Donlan's affidavit. An examination of the authorities available to the writers of this brief have disclosed but a single case at all parallel as regards facts with the case at bar. It is the case of *Bascom* v. *Oconee County*, 48 S. C. 55, 25 S. E. 984. The opinion was by a divided court. But the reasoning in both opinions, fitted to the facts present in the case at bar, furnishes authority, and we believe convincing argument, in support of the proposition that when commissioners are given general power over the laying out, controlling and management of public highways and bridges within a county, they have power impliedly to purchase a private bridge.

*Mr. D. M. Kelly*, Attorney General, and *Mr. C. S. Wagner*, Assistant Attorney General, for Respondent, submitted a brief; *Mr. Wagner* argued the cause orally.

The bridge in question can have status only as real property. This being true, the demurrer to the petition was properly sustained, because section 2894, subdivision 8, Revised Codes, defines and limits the powers of the board of county commissioners in the acquisition of real property. The right to purchase is

given, "but no purchase of real property must be made unless the value of the same has been previously estimated by three disinterested citizens of the county appointed by the district judge for that purpose, and no more than the appraised value must be paid therefor." Here the power to purchase is expressly conferred, and the method pointed out is exclusive. The attempt to purchase in the manner indicated by relator's petition cannot be justified under the guise of implied power. (*Lebcher* v. *Board of Commrs. of Custer County,* 9 Mont. 315, 23 Pac. 713; *State ex rel. Lambert* v. *Coad,* 23 Mont. 131, 57 Pac. 1092; 11 Cyc. 468.) "The power of a county to acquire and hold real property being derived from statutes, statutory provisions as to the board of officers by whom such power is to be exercised must be strictly followed. So also provisions as to the modes to be pursued are not simply directory, but operate as a limitation upon the power to purchase, and must be followed." (11 Cyc. 459.) Though a bridge may be considered as real property, it is doubtful whether under the provisions of section 2894, above, the county has the power to purchase. (See *Morse* v. *Granite County,* 44 Mont. 78, 119 Pac. 286; *Yegen* v. *Board of County Commrs., supra.*) There is no allegation that the bridge is necessary for the use of the county; hence even if the procedure outlined in section 2894 had been followed, the power of the board to make the purchase was wanting, for under the limitations prescribed, permission is given to purchase only "real or personal property necessary for the use of the county." (1 Elliott on Roads & Streets, 3d ed., sec. 55, and cases cited, *supra.*)

Even if we assume the commissioners had jurisdiction and a lawful contract was entered into, there is no allegation in the petition that the amount claimed has not been paid; and, as we understand the rules of pleading, this is a necessary allegation, at least in actions for the recovery of money by ordinary remedy. (*Hershfield & Bro.* v. *Aiken,* 3 Mont. 442; *Yancey* v. *Northern Pacific Ry. Co.,* 42 Mont. 342, 112 Pac. 533; *Roberts* v. *Treadwell,* 50 Cal. 520; *Frisch* v. *Caler,* 21 Cal. 71; *Ryan* v. *Holliday,*

110 Cal. 337, 42 Pac. 891; *Richards* v. *Lakeview Land Co.,* 115 Cal. 642, 47 Pac. 683.)

The provisions of section 2945 were not complied with by relator before instituting this proceeding. It was necessary for him to file a verified claim. (*First National Bank* v. *Custer Co.,* 7 Mont. 464, 17 Pac. 551; *Powder River Cattle Co.* v. *Custer Co.,* 9 Mont. 145, 22 Pac. 383; *Greely* v. *Cascade Co.,* 22 Mont. 580, 57 Pac. 274.)

MR. JUSTICE SANNER delivered the opinion of the court.

*Mandamus* by Edward Donlan, the relator and appellant, to compel the board of county commissioners of Sanders county to issue to him county warrants to the amount of $9,791.42 in payment for a bridge. In his amended affidavit for the writ the relator averred: That prior to March 10, 1913, he was the sole owner and entitled to the possession of a certain wagon bridge across the Flathead river near Perma, in the county of Sanders, which bridge "as finally constructed, united certain divided portions of a public highway"; that for sometime prior to March 10, 1913, negotiations had been carried on between him and the board looking to the purchase of said bridge, which negotiations finally, and on March 10, 1913, culminated in a contract whereby the board agreed to purchase said bridge from him "and pay therefor such a sum of money, not exceeding $10,000, as should be determined to be the fair cash valuation thereof, which fair cash valuation was to be fixed and determined by seven commissioners, all disinterested persons, three of which commissioners were to be appointed by respondents, three by said Edward Donlan, and one by the judge of the district court of the district in which Sanders county is situated, and which fair cash valuation, when determined by said commissioners, was to be reported under oath to said respondents"; that such commissioners were appointed; that they met and proceeded to investigate and determine the fair cash valuation of the bridge, and on July ——, 1913, made their unanimous report under oath to the board declaring the value of the bridge to be

$9,791.42; that thereafter, on July 10, 1913, the relator made written demand upon the board for the issuance and delivery to him of county warrants in said sum; that the board on the same day, "after considering the aforesaid demand, by action taken in meeting duly assembled, declined and refused to proceed further in the matter of the purchase of and payment for said Perma bridge, and did further decline and refuse to take any further action of any kind in connection with the matter, assigning as their sole reason therefor an existing doubt as to their authority to purchase said bridge"; that ever since March 10, 1913, the said bridge "has been accepted for use and used by respondents as a part of the aforesaid public highway, and has been at all said times used by the traveling public of Sanders county, as and for a portion of a public highway within said county"; that at all times since August ——, 1913, there has been in the possession of the county clerk of Sanders county, subject to delivery to the board upon its application therefor, "a conveyance from Edward Donlan and wife unto the county of Sanders, of all of the right, title and interest of the grantors in and to said Perma bridge." Other allegations, largely of a legal character, are appended to complete the affidavit. The respondents demurred on sixteen specified grounds, the sum of which is to challenge the sufficiency of the affidavit to justify the writ. The demurrer was sustained, and the relator, electing to stand upon his pleading, has appealed.

We think the ruling was correct. *Mandamus* lies only to [1] compel the performance of a clear legal duty (Revised Codes, sec. 7214), and the amended affidavit—to say the utmost possible for it—does not show a clear duty on the part of the board to issue the warrants demanded. We subjoin some of the reasons why this is so, without adverting to others which may suggest themselves. The relator alleges that when the [2, 3] contract of purchase was made, he was the owner of the bridge in question, having become such owner by constructing it so as to connect portions of a public highway separated by the Flathead river. This averment is self-destructive, potentially at least, for it means that he entered upon an existing

public highway, and, for reasons not disclosed, he affixed thereto a structure which became a part thereof. (*State ex rel. Foster* v. *Ritch,* 49 Mont. 155, 140 Pac. 731; Revised Codes, secs. 4425, 4427.) When this occurred does not appear, but from its occurrence—unexplained—certain inferences are permissible, among them these: That he acted as a mere volunteer intending that the bridge erected by him should be a part of the highway and belong to the public as such (Revised Codes, secs. 1337, 4572; Laws 1913, p. 139, sec. 3) ; or that he acted under some arrangement by which he might be compensated for the labor and materials furnished. In neither of these events could he be the owner of the structure as such or restrain the public in the free use thereof; nor in either of these events could the county commissioners legally contract to purchase it, because to all intents and purposes it belonged to the public.

Assuming, however, that there were circumstances not disclosed by the affidavit, which suffice to avoid the conclusion above stated and permit us to say that the bridge was the property of the relator, what kind of property was it? A bridge is of [4] necessity affixed to the realty and is real estate—as much real estate as the remainder of the highway of which it is a part. It is not claimed that the bridge in question was a toll-bridge, and our Code contained no provision touching the purchase of a private bridge as such; but it did and does contain a provision authorizing the county commissioners to purchase real estate for the use of the county. For such a purchase a method is prescribed by statute (Revised Codes, sec. 2894, subd. 8), and this method was not pursued in the transaction at bar. This being true, the proceedings were without legal sanction, and it was not the duty of the board to carry them further.

The judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE BRANTLY concurs.

MR. JUSTICE HOLLOWAY, being absent, takes no part in the foregoing decision.