BARNETT IRON WORKS, INC., APPELLANT, *v.* HARMON, SECRETARY OF STATE, RESPONDENT.

(No. 6,627.)

(Submitted February 13, 1930. Decided February 26, 1930.)

[285 Pac. 191.]

 

*Mr. C. E. Pew,* for Appellant.

40

*Mr. L. A. Foot,* Attorney General, and *Mr. T. H. Mac-Donald,* Assistant Attorney General, for Respondent.

MR. JUSTICE GALEN delivered the opinion of the court.

This is an action in mandamus to compel the defendant, as secretary of state, to receive for filing and to file a proposed amendment of the articles of incorporation of the Barnett Iron Works, Incorporated, changing its capital stock from $70,000, divided into 70,000 shares of the par value of $1 each, to 10,000 shares of common stock without a par value. The sum of $53 was tendered with such proposed amendment to cover filing fees. An alternative writ was issued. A general demurrer to the relator's duly verified complaint, together with a motion to quash the alternative writ, was interposed by the defendant, both of which were by the court, after hearing, sustained. Judgment was accordingly entered dismissing the proceeding, from which the relator has appealed.

The sole question for decision is whether under our laws a corporation is permitted to amend its articles of incorporation so as to provide for the issuance of capital stock having no par value.

Corporations are creatures of the law (sec. 5900, Rev. Codes 1921), and come into being only upon substantial compliance with the statute. The instrument by which a private corporation is formed is called "articles of incorporation" (Id., sec. 5904), which must set forth, among other things enumerated, the amount of the capital stock of the proposed corporation, "and the number of shares into which it is divided, and if there be more than one class of stock created by the articles of incorporation, a description of the different classes, with the terms on which the respective classes are created." (Id.,

sec. 5905.) They are formed under the laws of this state by filing "articles of incorporation in the office of the county clerk of the county in which the principal business of the company is to be transacted, *and a copy thereof, certified by the county clerk, with the secretary of state,* whereupon the secretary of state must issue to the corporation, over the great seal of the state, a certificate that a copy of the articles *containing the required statement of facts* has been filed in his office." (Id., sec. 5908.)

Preferred stock is authorized to be issued as expressed in the articles of incorporation, "but at no time shall the total amount of the preferred stock exceed two-thirds of the actual capital paid in cash or property; and such preferred stock may, if desired, be made subject to redemption at *not less than par.* * * * Unless its original or amended articles of incorporation shall so provide, no corporation shall create preferred stock." (Id., sec. 5994.) And, "any corporation * * * may, in the manner herein provided, amend its articles of incorporation * * * by changing the number, *par value,* character, class, or preference of its shares of capital stock, by increasing or decreasing the capital stock * * * or by an amendment in respect to any other matter *which might lawfully have been originally provided* in such articles of incorporation." (Id., sec. 5918.)

So far as here pertinent, the statute makes it the duty of the secretary of state to charge and collect for the filing of articles of incorporation, or a certificate of increase of capital stock of a domestic corporation, fees based upon the amount of its authorized capital stock, as follows: "Amounts up to one hundred thousand dollars, one dollar per thousand dollars. * * * Additional from two hundred and fifty thousand dollars to five hundred thousand dollars, sixty cents per thousand dollars. Additional from five hundred thousand dollars to one million dollars, forty cents per thousand dollars. Additional over one million dollars, twenty cents per thousand dollars. Providing, that no fee for filing any articles of incorporation or increase of capital stock shall be less than fifty

dollars." (Id., sec. 145.) The amount of money expressed as the *par value* of the shares of capital stock is entirely a matter of statutory regulation, although *some par value* would seem to be necessary in order to define the shares, unless the statute expressly authorizes the issuance of shares without a par value, as has been done in some of the states. (Fletcher, Cyc. Corp., sec. 3456; Id., 1927 Cumulative Supp., note to section 3456; Wickersham on Stock Without Par Value, Chap. 2; notes in 19 A. L. R., p. 131, and 36 A. L. R. 791.) As indicative of our express legislative policy not to give recognition to nonpar stock in Montana, foreign corporations having capital stock of *no par value* were by an Act of 1923 prohibited from entering this state for the transaction of business. (Chapter 132, Laws of 1923.) And, by Chapter 95 of the Laws of 1925, expressly repealing Chapter 132 of the Laws of 1923, it is provided: "If a foreign corporation has capital stock of *no par value,* its shares, for the purpose of estimating the amount of fees to be paid hereunder, shall be considered to be of the par value of $50.00 per share." No provision is made for, nor recognition given to, capital stock of a nonpar value in a domestic corporation; in fact, it is plain to us that nonpar stock is not authorized. Thus an arbitrary par value has been fixed by the legislature as a basis for fees to be charged by the secretary of state for foreign corporations having a nonpar stock coming into Montana.

While the secretary of state, in the performance of many of his official functions, is a mere ministerial officer, yet he is clothed with a quasi-judicial judgment in the organization of corporations under the laws of the state. He shall not accept or file any articles of incorporation of a domestic corporation wherein the name given to the proposed corporation is the same as an existing domestic corporation, or which, *in his judgment,* is so similar to the name of an existing domestic corporation as to mislead or confuse persons dealing with such corporations. And he must collect the fees prescribed by the statute for the filing of articles of incorporation

or amendments thereof. To do so, he must look to the prescribed value of the capital stock; and of course he cannot be compelled to file articles of incorporation without the payment of the requisite fees. It is elementary that, unless the act, the performance of which is sought to be compelled, is one which the law specially enjoins on one as a duty resulting from office, the writ of mandamus will not lie.

It is manifest from a reading of our statutes that the secretary of state is vested with some judgment in the premises, and that it is not a duty incumbent upon him without question to file in his office any paper tendered, said to be intended to organize a corporation under our laws, or to effect a change in the charter of an existing corporation. He must, in the first instance, see to it before filing that the statutes are substantially followed; and, in determining the amount of fees he must charge and collect, he is required to look only to the authorized amount and value of the capital stock. Since there is no provision in our law for the organization of corporations with capital stock of a nonpar value, nor fees prescribed for the filing of such type of articles, the secretary of state was right in refusing to accept for filing the amendment proposed to be made by the relator to its articles of incorporation. Accordingly, the judgment is affirmed.

Mr. Chief Justice Callaway and Associate Justices Matthews, Ford and Angstman concur.